UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MEET BIMAL DOSHI and BRITTANY PARISI DOSHI,

        Plaintiffs,

        -against-

CATHERINE KIM LEE,

        Defendant.
-----------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-02131 (OEM) (LKE)

ORELIA E. MERCHANT, United States District Judge:

This case arises out of a real estate contract dispute. Meet Bimal Doshi and Brittany Parisi Doshi ("Plaintiffs" or "Sellers") allege that Catherine Kim Lee ("Defendant" or "Purchaser") acted in bad faith to sabotage her application with the cooperative board to purchase Plaintiffs' apartment and assert claims for breach of contract and declaratory judgment. *See generally* Complaint, Dkt. 1-2 ("Complaint" or "Compl."). Before the Court are Plaintiffs' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to strike portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).[1]

For the following reasons Defendant's Motion to dismiss is granted in part and denied in part and Defendant's Motion to strike is denied without prejudice.

---

[1] Memorandum of Law in Support of Defendant's Motion to Dismiss, and to Strike Portions of, the Complaint, Dkt. 11-1 ("Motion" or "Mot."); Plaintiff[s'] Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff[s'] Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and to Strike Paragraph 56 of the Complaint Pursuant to Fed. R. Civ. P. 12(f), Dkt. 12 ("Opposition" or "Opp'n"); Reply Memorandum of Law in Support of Defendant's Motion to Dismiss, and to Strike Portions of, the Complaint, Dkt. 13 ("Reply").

## BACKGROUND[2]

### A. Parties

Plaintiffs are the owners of 99 State Street, Unit 4E, Brooklyn, New York 11201 (the "Unit"). Compl. ¶ 20. The Unit is located within a ten-unit cooperative residential building (the "Building"). *Id.* ¶ 24. The Building is self-managed by the unit owners by way of the Board of Directors of 99 State Associates, Inc. (the "Corporation"). *Id.* ¶ 25. Defendant is an individual currently residing in California. Compl. ¶ 21.

### B. The Unit Purchase Process

The Corporation manages the Building, coordinates maintenance, and evaluates prospective unit owners. *Id.* ¶ 25. The Corporation must approve new unit owners before the prospective owner and unit seller may proceed to closing. *Id.* ¶ 29. Prospective unit owners must submit a Prospective Buyer Application to the Corporation (the "Application"), along with a copy of the contract of sale and supporting documentation. *Id.* ¶ 26. The prospective owner must also undergo an interview process with non-interested Corporation shareholders. *Id.* ¶ 27.

In September 2024, Defendant began searching for an apartment to purchase in the New York City metropolitan area. *Id.* ¶ 30. On October 13, 2024, Defendant submitted an offer on the Unit after a virtual showing. *Id.* ¶ 32. Plaintiffs accepted her offer the next day. *Id.* ¶ 33.

### C. The Contract

On October 18, 2024, Plaintiffs and Defendant fully executed the contract of sale for the Unit. *Id.* ¶ 35; *see also id.*, Exhibit A at 27-33, Dkt. 1-2 (the "Contract").[3] The Contract includes riders by both Plaintiffs and Defendant. *See id.*, Exhibit A at 34-39, Dkt. 1-2 ("Plaintiffs' Rider);

---

[2] The following facts are taken from Plaintiffs' Complaint and are accepted as true for the purposes of Defendant's Motion. The Court recites only those facts relevant to resolving the pending Motion.

[3] Page number citations to the Contract refer to the ECF PageID pagination.

*id.* at 41-45, Dkt. 1-2 ("Defendant's Rider").   The parties agreed on the purchase price of $1,725,000.00.  *Id.* ¶ 3.  Plaintiff paid a deposit of $172,500.00, comprising ten percent of the purchase price (the "Deposit").  *Id.* ¶ 4.  The closing date was February 1, 2025.  *Id.* ¶ 35.

The Contract specifies that "[a]ll '[p]roposed [o]ccupants' of the Unit are: Purchaser."  *Id.* ¶ 36 (quoting Contract ¶ 1.23).  Defendant represents that she was acquiring the shares and lease for residential occupancy of the Unit solely by the proposed occupants identified in Paragraph 1.23.   *Id.* (quoting Contract ¶ 4.2.1).   Defendant confirms that she "shall not make any representations to the Corporation contrary" to the foregoing covenant.  *Id.* ¶ 38 (quoting Contract ¶ 4.2.5).  Plaintiffs' Rider provides "that the Unit will be [Purchaser's] primary residence."  *Id.* ¶ 37 (quoting Plaintiffs' Rider ¶ 35(e)).  The Unit's sale to Defendant is conditional upon "the unconditional consent of the Corporation."  *Id.* ¶ 39 (quoting Contract ¶ 6.1).

The Contract provides that "Purchaser shall in good faith" submit the Application to the Corporation and "attend (and cause any Proposed Occupant to attend) one or more personal interviews, as requested by the Corporation."  *Id.* (quoting Contract ¶¶ 6.2-6.2.2).  Furthermore, "[i]f such consent is refused, or not given, due to Purchaser's bad faith conduct[,] Purchaser shall be in default and ¶ 13.1 shall govern."  *Id.* ¶ 40 (quoting Contract ¶ 6.4).

Paragraph 13.1 provides that "[i]n the event of a default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to cancel this Contract, retain the Contract Deposit as liquidated damages and, if applicable, Seller may enforce the indemnity in ¶ 13.3 as to brokerage commission or sue under ¶ 13.4."  *Id.* ¶ 41 (quoting Contract ¶ 13.1).  Paragraph 27.1 states that "[t]he Contract Deposit shall be deposited by Escrowee in an escrow account . . . and the proceeds held and disbursed in accordance with the terms of this Contract" and, in the event of a dispute,

"Escrowee may continue to hold the Contract Deposit until otherwise directed by . . . a final, non-appealable judgment, order or decree of a court of competent jurisdiction."  Contract ¶ 27.1.

The Contract also states that Plaintiffs and Defendant waive the right to trial by jury in any litigation arising out of the Contract.  Compl. ¶ 42 (quoting Plaintiffs' Rider ¶ 40).  Additionally, "[i]n connection with any litigation arising out of [the] Contract, the prevailing party shall be entitled to recover all costs thereof, including, without limitation, reasonable attorneys' fees and disbursements for services rendered in connection with such litigation."  *Id.*

### D.  Defendant's Application and Interview Process

On or about November 15, 2024, Defendant submitted her Application to the Corporation.  *Id.* ¶ 43.  Defendant made additional representations in her application that Plaintiffs allege were not included in the Contract including that Defendant's daughter would be an additional "primary occupant" of the Unit and Defendant would be bringing a dog and a cat.  *Id.* ¶¶ 44-45.

The Corporation held two interviews with Defendant.  *Id.* ¶¶ 46, 48.  On December 3, 2024, nine non-interested unit owners and shareholders of the Corporation conducted their first interview of Defendant.  *Id.* ¶ 46.  Defendant stated that she planned for her eldest daughter to live in the Unit with her, but also that her daughter may live alone in the Unit as the primary resident.  *Id.* ¶ 47.  This statement prompted the Corporation to schedule a second interview with Defendant on January 7, 2025.  *Id.* ¶¶ 48-49.  After the second interview, one of the Unit owners emailed the other Corporation members listing what "issues" would disqualify Defendant's application: (1) "A large, anxious dog who by applicant's own admission 'barks a lot'"; (2) "Buyer likely to be absent a lot"; (3) Defendant asked for her daughter to be a co-owner; (4) Defendant asked about installing a chair lift, which would "be a major expense, would take up a lot of space and be of no interest

4

or use to the majority of shareholders"; and (5) Defendant asked about how thin the walls are and said she and her daughter like to play loud music.  *Id.* ¶ 51.

On January 10, 2025, allegedly "after her real estate counsel had warned her that such bad faith would jeopardize her Deposit[,]"[4] Defendant wrote to "some of the non-interested shareholders of the Corporation with whom she had interviewed" to clarify a few issues including that "she 'asked questions about sound traveling through walls' only so 'we don't disturb anyone' when listening to music, and claimed that she believed 'that once you get to know' her dog, who 'may bark at times, you will love her and she is not a nuisance or troubling with excessive barking.'"  *Id.* ¶ 56.

On January 12, 2025, the Corporation wrote to Defendant stating that "your description of your dog in this week's follow up did raise a new issue.  Noise, particularly a barking dog, is problematic," and asked how Defendant would address this issue.  *Id.* ¶ 57.  Additionally, the Corporation stated that it expects buyers to reside in their units, rather than for them to treat the unit as a "pied-a-terre."  *Id.*  Defendant responded that she did not anticipate her dog's barking "being a problem," and that due to her parents' caretaking, she would be traveling back and forth as needed, while her daughter would be "contributing to the [cooperative] community."  *Id.* ¶ 58.

On January 17, 2025, the Corporation notified Plaintiffs' real estate counsel that the cooperative voted against approving Defendant's purchase of the Unit, who then relayed this information to Defendant's counsel on the same day.  *Id.* ¶¶ 59-60.

### E.  Defendant's Alleged Default

On January 24, 2025, Plaintiffs' real estate counsel notified Defendant's counsel that Defendant "is in default" of the Contract and her default was grounds for Plaintiffs to retain her

---

[4] This allegation is the subject of Defendant's motion to strike.

Deposit as liquidated damages under Paragraph 13.1 of the Contract. *Id.* ¶ 68; *see also id.*, Exhibit C at 50-51, Dkt. 1-2 ("Default Letter").[5]  Plaintiffs claimed that Defendant "'made misrepresentations' to the Corporation 'contrary to what she represented in the Contract' and 'did not act in good faith in accordance with Paragraph 6.2 of the Contract.'" *Id.* (quoting Default Letter at 50).  Defendant has refused to agree to Plaintiffs' return of the Deposit and has demanded that Plaintiffs return the Deposit. *Id.* ¶ 69.

On February 12, 2025, Plaintiffs' counsel served on Defendant's counsel a formal Notice of Objection, rejecting Defendant's demand for the Deposit. *Id.* ¶ 70.

On February 26, 2025, Plaintiffs filed a complaint against Defendant in the Supreme Court of the State of New York, Kings County.  Notice of Removal ¶ 2, Dkt. 1; *see* Compl.  On April 16, 2025, Defendant removed the action to this Court.  *See generally* Notice of Removal, Dkt. 1.

## LEGAL STANDARDS

### A.  Motion to Dismiss: Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim may be deemed facially plausible if the alleged facts allow the court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The principle that a court must accept the allegations in a complaint as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).  On a Rule 12(b)(6) motion, the Court may consider "any written instrument attached to [the complaint]

---

[5] Page number citations to the Default Letter refer to the ECF PageID pagination.

6

as an exhibit or any statements or documents incorporated in it by reference[,]" as well as documents "integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).[6]

### B.  Motion to Strike: Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") provides that "[t]he court may strike from a pleading an insufficient defense or any redundant immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  "In deciding whether to strike immaterial matter, 'it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.'" *Shakima O. v. Westchester County.*, 12 CV 9468(VB), 2014 WL 521608, at *5 (S.D.N.Y. Feb. 10, 2014) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  "Rule 12(f) motion[s are] left to the district court's discretion." *E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004).

### DISCUSSION

Plaintiffs argue that Defendant purposely sabotaged her Application with the Corporation by raising numerous issues during the interview regarding the terms of her use of the Unit that were not set forth in the Contract.  Plaintiffs assert two causes of action against Defendant: (1) breach of the contract of sale and (2) declaratory judgment.  Defendant moves to dismiss both causes of action.  Defendant further moves to strike a portion of the Complaint.  The Court addresses each motion in turn.

---

[6] Plaintiffs attach the Contract, Plaintiffs' Rider, and Defendant's Rider to their Complaint.  Because "[a] complaint is deemed to include any written instrument attached to it as an exhibit," *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004), the Court shall herein consider the Contract and Riders.

7

### A. Breach of Contract Claim

Plaintiffs allege Defendant breached the contract in two ways: first by making a series of claims in the interview process to cause the Corporation to deny her Application and second by making misrepresentations in the Contract that she later sought to change or renege upon, both of which demonstrate her bad faith conduct in contravention of the Contract's Paragraph 6.4. Compl. ¶ 74. The premise of Defendant's Motion is that Plaintiffs fail to allege a breach of contract claim because they do not plausibly allege that Defendant acted in bad faith. Mot. at 10-16.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). The parties do not dispute the existence of the Contract, Compl. ¶ 73, Plaintiffs' performance, *id.* ¶ 77, or damages, *id.* ¶ 82. Thus, Plaintiffs meet three of the four requisite prongs. The issue is whether Plaintiffs adequately plead a breach of contract by alleging that Defendant acted in bad faith to prevent the Corporation's approval of her Application. *Id.* ¶¶ 74-75.

To plausibly plead breach, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue" so that the adverse party has "fair notice" of the claim asserted and the nature of the alleged breach. *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001). Consequently, a conclusory statement that an agreement was breached is insufficient. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

Here, Plaintiffs have provided sufficient notice of the contractual provisions allegedly breached and the nature of the breach. Plaintiffs put Defendant on notice of their claim that she breached the contract by making misrepresentations in the Contract. Plaintiffs allege that, by

making representations to the Corporation that were contrary to the representations set forth in the Contract, Defendant breached Paragraph 4.2.5 which states that "Purchaser shall not make any representations to the Corporation contrary to the foregoing. . . ."  Compl. ¶ 38.  By way of example, Plaintiffs allege that, per Paragraph 4.2.1, Defendant represents and covenants that the Unit would be occupied "solely by the Proposed Occupants identified in ¶ 1.23" but she does not list her pets or her daughter as "Proposed Occupants."  *Id.* ¶ 36.  She then notified the Corporation in her interview process that she planned on bringing a dog and a cat and that her daughter would be the primary occupant.  *Id.* ¶¶ 66, 75(a), (c).  Defendant also represents that the Unit "will be her primary residence" in Plaintiffs' Rider ¶ 35(e), Compl. ¶ 37, but then informed the Corporation that she planned to be "'absent a lot' as the 'primary caregiver'" for her parents in California, *see* Compl. ¶¶ 66, 75(b).  Plaintiffs have thereby alleged the breach and its nature—Defendant's misrepresentations in the Contract and her inconsistent interview statements.

Similarly, Plaintiffs have put Defendant on notice of their claim that Defendant breached the contract by acting in bad faith.  As an initial matter, breach of contract and breach of the covenant of good faith and fair dealing go hand-in-hand.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins.*, 310 F.3d 73, 80 (2d Cir. 2002)) (explaining that, under New York law, a breach of the covenant of good faith and fair dealing is "merely a breach of the underlying contract.").  Plaintiffs allege that Defendant intentionally made claims to sabotage the Corporation's approval, thereby dooming the parties' ability to close.  Compl. ¶¶ 75, 77-79.  These actions, if true, contravened Paragraph 6.2 that Defendant act in "good faith" in submitting her Application to the Corporation, *id.* ¶ 78, in addition to the implicit covenant of good faith and fair dealing.  Again, Plaintiffs have sufficiently alleged a breach of the contract on the basis of Defendant's purported bad faith.  They have put Defendant

9

on notice of the alleged breach and crystalized the nature of her bad faith by alleging that she raised various claims at the last minute in an apparent attempt to tank her pending approval with the Corporation. *See, e.g., id.* ¶ 75.

Defendant suggests that the Court should adhere to a higher standard in analyzing the plausibility of bad faith. *See* Mot. at 10-13 (citing *Alter v. Levine*, 870 N.Y.S.2d 464 (2d Dep't 2008) (assessing bad faith at the summary judgment stage); *Jangana v. Cogan*, 907 N.Y.S.2d 670 (1st Dep't 2010) (same); *Khanal v. Sheldon*, 953 N.Y.S.2d 550 (N.Y. Sup. Ct. 2012) (same)). But, a higher standard is inappropriate at this early stage. Bad faith is an intrinsically fact-based question, posing the need for a deeper inquiry than is permissible on a motion to dismiss. *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 170 (S.D.N.Y. 2020) ("Bad faith . . . is usually treated as a fact question that cannot be resolved on a Rule 12(b)(6) motion to dismiss.") (collecting cases); *but see Gas Natural, Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 383 (S.D.N.Y. 2014) (noting that there must be "at least some assessment of whether the Complaint has alleged facts that 'nudge' an assertion that a party has acted in bad faith 'across the line from conceivable to plausible.'" (quoting *Iqbal*, 556 U.S. at 680)). Plaintiffs have plausibly asserted that Defendant acted in a fashion that encouraged the Corporation to disapprove her by raising a number of issues that contradicted the Contract and the Corporation's standards. Defendant's Motion as to bad faith is precipitous; whether or not Defendant acted in bad faith is a fact-based question best answered by a jury.

Accordingly, Defendant's motion to dismiss Plaintiffs' breach of contract claim is denied.

### B. Declaratory Judgment Claim

Plaintiffs' second cause of action seeks declaratory judgment that "(a) Plaintiffs are entitled to the retention of the Contract Deposit pursuant to sections 6.2 and 13.1 of the Contract of Sale;

10

(b) Defendant has no valid claim to the Deposit that properly belongs to Plaintiffs; and (c) the escrow agent currently holding the Deposit must forthwith transfer the Deposit to Plaintiffs." Compl. ¶ 96.

Defendant argues that Plaintiffs' declaratory judgment claim is duplicative of the breach of contract claim, which is itself insufficient as a matter of law. Mot. at 16-17. The Declaratory Judgment Act permits a district court to exercise jurisdiction over a proposed declaratory judgment action if an actual controversy exists. *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 121 (S.D.N.Y. 2016) (citing 28 U.S.C. § 2201(a)). Before reaching any questions of law as to the declaratory judgment claim itself, a district court must first determine whether an actual controversy exists, then whether it will exercise jurisdiction over the controversy. *See id.* at 122. As previously discussed, Plaintiffs have plausibly alleged a breach of contract claim. Therefore, the Court addresses whether Plaintiffs' declaratory judgment claim is duplicative such that the Court should decline to exercise jurisdiction over it.

### 1. Actual Controversy

An actual controversy arises where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The disagreement must have taken on a "fixed and final shape" in that the dispute is more than hypothetical and based on "concrete allegations of fact." *See S.E.C. v. Collector's Coffee, Inc.*, 19 Civ. 4355 (VM) (GWG), 2023 WL 3575428, at *6 (S.D.N.Y. May 22, 2023) (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952)), *report & recommendation adopted*, 19 Civ. 4355, 2023 WL 3862662 (S.D.N.Y. June 7, 2023). Plaintiffs

11

and Defendant have adverse interests in the outcome of the Contract and the dispute is based on concrete allegations of fact.  As such, there is an actual controversy that the Court has discretion to exercise its jurisdiction over.

### 2.  Discretion to Exercise Jurisdiction

As to the Court's "broad discretion" to exercise jurisdiction over actions for declaratory judgment, the Second Circuit advises that six conditions should inform a district court's decision:

> (1) "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy," and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction.

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023) (alterations in original) (citing 28 U.S.C. § 2201(a)) (first quoting *Niagara Mohawk Power v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 105 (2d Cir. 2012); then quoting *Reifer v. Westport Ins.*, 751 F.3d 129, 149 (3d Cir. 2014)).

In considering the first two factors, where the issues raised in a declaratory judgment claim are duplicative of the issues raised in the breach of contract claim, a court may decline to exercise jurisdiction.  *See iGem Commc'ns LLC v. MAG DS Corp.*, 24cv5649 (DLC), 2024 WL 5155839, at *2 (S.D.N.Y. Dec. 18, 2024); *see also Steel River Sys., LLC v. Variant Alternative Income Fund*, 803 F. Supp. 3d 290, 311 (S.D.N.Y. 2025) ("Courts reject declaratory judgment claims 'when other claims in the suit will resolve the same issues,' because, under such circumstances, a declaratory judgment will not serve any useful purpose" quoting *Optanix, Inc. v. Alorica Inc.*, 1:20-cv-09660-GHW, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021))).  Claims are duplicative under New York

law if they arise from the same facts and allege the same damages.  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008).

Here, resolution of the breach of contract claim would resolve whether Plaintiffs are entitled to retain the Deposit and whether Defendant has a valid claim to the deposit.  Under New York law, damages for a valid breach of contract claim "should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract."  *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 156 (2d Cir. 2026) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)).  Assuming the facts in the Complaint as true, had Defendant acted in bad faith and breached the Contract, she would have no valid claim to the Deposit and Plaintiffs would be entitled to retain the Deposit per Paragraph 13.1 of the Contract.  *See* Contract ¶ 13.1 ("In the event of a default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to . . . retain the Contract Deposit as liquidated damages"); *see Lim v. Radish Media Inc.*, 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (affirming the district court's dismissal of a declaratory judgment claim as "impermissibly duplicative" of a breach of contract claim where the plaintiff's "breach of contract claim would resolve whether [the plaintiff] had a valid equity interest [] and the value of that interest").

Additionally, here, resolution of the breach of contract claim would resolve whether the escrowee would return the deposit per Paragraph 27.1 of the Contract.  *See* Contract ¶ 27.1 ("Escrowee may continue to hold the Contract Deposit until otherwise directed by . . . a final, non-appealable judgment, order or decree of a court of competent jurisdiction.").  Any concern that the escrowee would not comply with such provision, should Plaintiffs succeed on their breach of contract claim, is merely speculative and insufficient to distinguish the declaratory judgment claim from the breach of contract claim.  *See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 21-70-

13

cv, 2021 WL 6060710, at *5 (2d Cir. Dec. 20, 2021) (declining to distinguish between declaratory judgment and breach of contract claims in part because the suggestion that the breaching party would "disregard the district court's binding judgment as to how to apply [the] recoveries" was "merely speculative").

Because of the duplicity in relief between Plaintiffs' breach of contract and declaratory judgment claims, Defendant's motion to dismiss Plaintiffs' declaratory judgment claim is granted.

### C. Motion to Strike

In the Complaint, Plaintiffs allege that, *inter alia*

On January 10, 2025, in apparent recognition that she had "blown" the interview and perhaps attempting to avoid the readily apparent assertion that she had done so in bad faith, *after her real estate counsel had warned her that such bad faith would jeopardize her Deposit*, Defendant wrote to some of the non-interested shareholders of the Corporation with whom she had interviewed.

Compl. ¶ 56 (emphasis added). Defendant moves to strike the clause regarding Defendant's real estate counsel's advice. Mot. at 17-18. She asserts that she is prejudiced by the statement because it is protected under the attorney-client privilege in addition to inadmissible hearsay. *Id.*

"Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (quoting *In re Tronox, Inc. Sec. Litig.*, 9 Civ. 6220 (SAS), 2010 WL 2835545, at *4 (S.D.N.Y. June 28, 2010)). As the party asserting the attorney-client privilege, Defendant bears the burden of establishing that the privilege applies to the challenged allegations. *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) (citation omitted). The attorney-client privilege applies where: "(1) a communication between client and counsel . . . (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 294 (S.D.N.Y. 2024) (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)) (citation omitted). Furthermore, the Second Circuit has

14

cautioned that evidentiary questions should be avoided at the preliminary stage of proceedings. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Defendant has not established any portion of her burden as to attorney-client privilege and it is not clear, based solely on the pleadings, whether privilege applies. *See Lee*, 751 F. Supp. 3d at 295 (denying motion to strike because it was not clear on the face of the pleadings whether the attorney-client privilege properly applied). At this preliminary stage and without sufficient facts, Defendant's motion to strike on the basis of privilege and hearsay is denied without prejudice as premature.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is granted with respect to Plaintiffs' declaratory judgment claim and denied with respect to Plaintiffs' breach of contract claim, and Defendant's Motion to strike is denied without prejudice as premature.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

March 3, 2026
Brooklyn, New York